UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Chen Wang, Zhilin Wang and Shaoyu Wang, individually and on behalf all other employees similarly situated, <br><br> Plaintiffs, <br><br> - against - <br><br><br> Ichiro Asian Fusion Inc. d/b/a Ichiro Modern Japanese & Bar, Danny "Doe", Ben "Doe" and Jian Ping Chen <br><br> Defendants. | Case No. <br><br> **COLLECTIVE ACTION& CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs Chen Wang, Zhilin Wang and Shaoyu Wang ("Plaintiffs" collectively) on their own behalf and on behalf of all others similarly situated, by and through their undersigned attorneys, Hang & Associates, PLLC, hereby files this complaint against the Defendants Ichiro Asian Fusion Inc. d/b/a Ichiro Modern Japanese & Bar, Danny "Doe", Ben "Doe" and Jian Ping Chen ("Defendants" collectively), alleges and shows the Court the following:

## INTRODUCTION

1.      This is an action brought by Plaintiffs on their own behalf and on behalf of similarly situated employees, alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA") and the New York Labor Law, arising from Defendants' various willful and unlawful employment policies, patterns and/or practices.

2.      Upon information and belief, Defendants have willfully and intentionally committed widespread violations of the FLSA and NYLL by engaging in a pattern and practice of

failing to pay their employees, including Plaintiffs, compensation for all hours worked, minimum wage, and overtime compensation for all hours worked over forty (40) each workweek

3.     Plaintiffs allege pursuant to the FLSA, that they are entitled to recover from the Defendants: (1) unpaid minimum wages, (2) unpaid overtime wages, (3) reimbursement for expenses relating to tools of the trade (4) liquidated damages, (5) prejudgment and post-judgment interest; and (6) attorneys' fees and costs.

4.     Plaintiffs further allege pursuant to New York Labor Law § 650 et seq. and 12 New York Codes, Rules and Regulations §§ 146 ("NYCRR") and New York Common law that they are entitled to recover from the Defendants: (1) unpaid minimum wages; (2) unpaid overtime compensation; (3) unpaid "spread of hours" premium for each day they worked ten (10) or more hours; (4) compensation for failure to provide wage notice at the time of hiring and failure to provide paystubs in violation of the NYLL; (5) liquidated damages equal to the sum of unpaid minimum, unpaid overtime compensation, and unpaid "spread of hours" premium pursuant to the NY Wage Theft Prevention Act; (6) prejudgment and post-judgment interest; and (7) attorney's fees and costs.

## JURISDICTION AND VENUE

5.     This Court has original federal question jurisdiction over this controversy under 29 U.S.C. §216(b), 28 U.S.C. § 1331, and has supplemental jurisdiction over the New York Labor Law claims pursuant to 28 U.S.C. § 1367(a).

6.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PLAINTIFFS

7.      Plaintiff Chen Wang is a resident of Flushing, Queens and was employed as a deliveryman by Defendants Ichiro Asian Fusion Inc. d/b/a Ichiro Modern Japanese & Bar with principal place of business at 80 Mamaroneck Ave., White Plains, NY 10601 from on or around June 8, 2017 to on or around November 16, 2017**.**

8.      Plaintiff Zhilin Wang is a resident of Flushing, Queens and was employed as a deliveryman by Defendants Ichiro Asian Fusion Inc. d/b/a Ichiro Modern Japanese & Bar with principal place of business at 80 Mamaroneck Ave., White Plains, NY 10601 from on or around October 1, 2016 to on or around November 15, 2017.

9.      Plaintiff Shaoyu Wang is a resident of Fresh Meadows, Queens and was employed as a deliveryman by Defendants Ichiro Asian Fusion Inc. d/b/a Ichiro Modern Japanese & Bar with principal place of business at 80 Mamaroneck Ave., White Plains, NY 10601 first from around July 2016 to around September 2016 and then from around January 2017 to June 7, 2017.

## CORPORATE DEFENDANT

10.      Upon information and belief, Corporate Defendant, Ichiro Asian Fusion Inc. d/b/a Ichiro Modern Japanese & Bar, is a domestic business corporation organization and existing under the laws of the State of New York and maintaining its principal place of business at 80 Mamaroneck Ave., White Plains, NY 10601.

11.      Upon information and belief, at all times relevant hereto, Corporate Defendant, is a business or enterprise engaged in interstate commerce employing more than ten (10) employees and earning gross annual sales over Five Hundred Thousand Dollars ($500,000).

12.      Upon information and belief, at all relevant times hereto, Corporate Defendant has been and continue to be "employers" engaged in interstate "commerce" and/or in the production

of "goods" for "commerce", within the meaning of the Fair Labor Standards Act ("FLSA"), 29 U.S.C § 203.

13.     Corporate Defendant constitutes an enterprise within the meaning of the FLSA, 29 U.S.C § 203(r).

14.     Corporate Defendant have been Plaintiffs' employer within the meaning of the New York State Labor Law ("NYLL") § 2, 190, and 651.

## INDIVIDUAL DEFENDANTS

15.     Upon information and belief, Defendant Danny "Doe" is the owner, officer, director and/or managing agent of Ichiro Asian Fusion Inc. d/b/a Ichiro Modern Japanese & Bar at 80 Mamaroneck Ave., White Plains, NY 10601 and participated in the day-to-day operations of Ichiro Modern Japanese & Bar, acted intentionally and maliciously, is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with Ichiro Asian Fusion Inc. d/b/a Ichiro Modern Japanese & Bar.

16.     Upon information and belief, Defendant Danny "Doe" owns the stock of Ichiro Asian Fusion Inc. and manages and makes all business decisions including but not limited to the amount in salary the employee will receive and the number of hours employees will work. (See Exhibit 2).

17.     Upon information and belief, Defendant Ben "Doe" is the owner, officer, director and/or managing agent of Ichiro Asian Fusion Inc. d/b/a Ichiro Modern Japanese & Bar at 80 Mamaroneck Ave., White Plains, NY 10601 and participated in the day-to-day operations of Ichiro Modern Japanese & Bar, acted intentionally and maliciously, is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the

regulations thereunder, and is jointly and severally liable with Ichiro Asian Fusion Inc. d/b/a Ichiro Modern Japanese & Bar.

18.    Upon information and belief, Defendant Ben "Doe" owns the stock of Ichiro Asian Fusion Inc. d/b/a Ichiro Modern Japanese & Bar and manages and makes all business decisions including but not limited to the amount in salary the employee will receive and the number of hours employees will work. (See Exhibit 2).

19.    Upon information and belief, Defendant and Jian Ping Chen is the owner, officer, director and/or managing agent of Ichiro Asian Fusion Inc. d/b/a Ichiro Modern Japanese & Bar at 80 Mamaroneck Ave., White Plains, NY 10601 and participated in the day-to-day operations Ichiro Modern Japanese & Bar, acted intentionally and maliciously, is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with Ichiro Asian Fusion Inc. d/b/a Ichiro Modern Japanese & Bar.

20.    Upon information and belief, Defendant Jian Ping Chen owns the stock of Ichiro Asian Fusion Inc. d/b/a Ichiro Modern Japanese & Bar and manages and makes all business decisions including but not limited to the amount in salary the employee will receive and the number of hours employees will work. (See Exhibit 2).

21.    At all times relevant herein, Ichiro Asian Fusion Inc. d/b/a Ichiro Modern Japanese & Bar, was and continues to be, an "enterprise engaged in commerce" within the meaning of FLSA.

22.    At all relevant times, the work performed by Plaintiffs were directly essential to the business operated by Ichiro Asian Fusion Inc. d/b/a Ichiro Modern Japanese & Bar.

23.     At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs their lawfully earned minimum wages, overtime compensation and spread-of-hour premiums, and failed to provide them a wage notice at the time of hiring in violation of the NYLL.

24.     Plaintiffs have fulfilled all conditions precedent to the institution of this action and/or conditions have been waived.

## CLASS ALLEGATIONS

25.     Plaintiffs sue on their own behalf and on behalf of a class of persons under Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

26.     Plaintiffs bring their New York Labor Law claims on behalf of all persons who were employed by Defendants at any time since December 11, 2011 to the entry of judgment in this case (the "Class Period") who were non-exempt employees within the meaning of the New York Labor Law and have not been paid wages and overtime wages in violation of the New York Labor Law (the "Class").

27.     The persons in the Class identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendants, upon information and belief, there are in excess of thirty (40) members of the Class during the Class Period.

28.     Plaintiffs' claims are typical of the claims of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy--particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

29.     The Defendants have acted or refused to act on grounds generally applicable to the

class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

30.     Plaintiffs have committed themselves to pursuing this action and have retained competent counsel experienced in employment law and class action litigation.

31.     Plaintiffs have the same interests in this matter as all other members of the class and Plaintiffs' claims are typical of the Class.

32.     There are questions of law and fact common to the Class which predominate over any questions solely affecting the individual members of the Class, including but not limited to:

      a.     whether the Defendants employed the Plaintiffs and Class within the meaning of the New York Labor Law;

      b.     whether the Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the members of the Class;

      c.     what proof of hours worked is sufficient where the employers fails in its duty to maintain time records;

      d.     whether Defendants failed to pay the Class wages for all hours worked as well as overtime compensation for hours worked in excess of forty hours per workweek, in violation of the NYLL and the regulations promulgated thereunder;

      e.     whether Defendants' violations of the NYLL are willful as that term is used within the context of the NYLL;

      f.     whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, punitive and statutory damages, interest, costs and disbursements and attorneys' fees;

g.    whether Defendants should be enjoined from such violations of the NYLL in the future;

h.    whether Defendants failed to pay Plaintiffs and the members of the Class an additional hour of pay for each hour worked in excess of ten hours in one day and an additional hour of pay for each split worked in a day; and

i.    whether Defendants failed to provide Plaintiffs and the Class with written notices of their rates of pay, the regular pay day, the name of the employer, any "doing business as" names used by the employer and other information and disclosures as required by New York Labor Law, §195(1)(a); and

j.    whether Defendants failed to provide Plaintiff and the Class with written statements of their wages, listing the dates of work covered by the payment of wages, the rate of pay and the basis thereof as required by New York Labor Law, § 195(3).

**STATEMENT OF FACTS**

33.    Defendants committed the following alleged acts knowingly, intentionally and willfully.

34.    Defendants knew that the nonpayment of minimum wages, overtime pay, spread of hours pay, and failure to provide the required wage notice at the time of hiring would financially injure Plaintiffs and similarly situated employees and violate state and federal laws.

**Plaintiff Chen Wang**

35.    From on or around June 8, 2017 to on or around November 16, 2017, Plaintiff Chen Wang was hired by Defendants to work as a deliveryman for Defendants' restaurant.

36.     From on or around June 8, 2017 to July 8, 2017, Plaintiff worked three (3) full days on Wednesday, Thursday and Friday, and two (2) half days on Saturday and Sunday. Specifically, he worked from around 11:00 am to 10:00 pm on Wednesday and Thursday, from around 11:00 am to 11:00 pm on Friday. He worked from 5: 00 pm to 11:00 pm on Saturday and from 5:00 pm to 10:00 pm on Sunday. Although Plaintiff had to cut short his break if there are deliveries have to be made during his break, Plaintiff generally had a one-hour break on Thursday and Friday. Plaintiff generally did not have 30-minute uninterrupted break during his work on Wednesday, Saturday and Sunday. Plaintiff therefore worked about forty-three (43) hours a week during this period.

37.     From on or around July 9, 2017 to July 8, 2017, Plaintiff was paid $60 by cash for a full workday and $30 for a half work day by cash regardless of the number of hours he actually worked.

38.     From on or around July 9, 2017 to November 16, 2017, Plaintiff Chen Wang worked five (5) full work day on Monday, Tuesday, Thursday, Friday and Saturday or Sunday and one (1) half day on either Saturday or Sunday.

39.     On Monday, Tuesday and Thursday, Plaintiff would work from around 11:00 am to 10:00 pm. On Friday, Plaintiff would work from around 11:00 am to 11:00 pm. On Saturday ( if he works a full day), his daily work hour ran from 12:00 pm to 11:00 pm. If he work a full day on Sunday, he would work from 1:00 pm to 10:00 pm. His half-work day hours on Saturday ran from 5:00 pm to 11:00 pm and ran from 5:00 pm to 10:00 pm on Sunday. Plaintiff was not afforded at least a 30-minute uninterrupted when he works on Sunday, Saturday or on Tuesday. Plaintiff otherwise enjoyed an around one-hour break on the other work days despite that he would have to

make deliveries when needed during his break. Plaintiff therefore worked around fifty-seven (57) hours a week during the period.

40.     From on or around July 9, 2017 to November 16, 2017, Plaintiff was paid $1,300 per month regardless of the actual hours he worked.

41.     As a delivery person, Plaintiff regularly received tips. Plaintiff, however, was never given a notice regarding Defendants' intention to take tip credit against the minimum wage.

42.     Plaintiff would pool his tips with one other delivery worker on some but not on all of his work days. For the period from June 8, 2017 to on or around November 16, 2017, Plaintiff Wang, on average, received about $450 in tips per week. From on or around July 9, 2017 to November 16, 2017, Plaintiff's tip income was about $550 per week.

### Plaintiff Zhilin Wang

43.     From on or around October 1, 2016 to on or around November 15, 2017, Plaintiff Zhilin Wang was hired by Defendants to work as a deliveryman for Defendants' restaurant.

44.     From on or around October 1, 2016  to December 2016, Plaintiff worked three (3) full days on Wednesday, Thursday and Friday, and two (2) half days on Saturday and Sunday. Specifically, he worked from around 11:00 am to 10:00 pm on Wednesday and Thursday, from around 11:00 am to 11:00 pm on Friday. He worked from 5: 00 pm to 11:00 pm on Saturday and from 5:00 pm to 10:00 pm on Sunday. Although Plaintiff had to cut short his break if there are deliveries have to be made during his break, Plaintiff generally had a one-hour break on Thursday and Friday. Plaintiff generally did not have any uninterrupted breaks during his work on Wednesday, Saturday and Sunday. Plaintiff therefore worked about forty-three (43) hours per week.

45.     From on or around October 1, 2016 to December 2016, Plaintiff was paid $60 by cash for a full workday and $40 for a half work day by cash regardless of the number of hours he actually worked.

46.     From on or around January 2017 to July 8, 2017, Plaintiff Zhilin Wang worked six (6) full work days in a week with one day off on Wednesday.

47.     On Monday, Tuesday and Thursday, Plaintiff would work from around 11:00 am to 10:00 pm. On Friday, Plaintiff would work from around 11:00 am to 11:00 pm. On Saturday, Plaintiff would work from 12:00 pm to 11:00 pm, and on Sunday, he would work from 1:00 pm to 10:00 pm. Plaintiff was not afforded at least a 30-minute uninterrupted when he works on Sunday, Saturday, Monday or Tuesday. Plaintiff otherwise enjoyed an around one-hour break on the other work days despite that he would have to make deliveries when needed during his break. Plaintiff therefore worked around sixty-three (63) hours per week.

48.     From on or around January 2017 to July 8, 2017, Plaintiff was paid $1,500 per month by cash regardless of the actual hours he worked.

49.     From on or around July 9, 2017 to November 15, 2017, Plaintiff Zhilin Wang worked five (5) full work days on Monday, Wednesday , Thursday, Friday and Saturday or Sunday and one (1) half day on either Saturday or Sunday.

50.     On Monday, Wednesday and Thursday, Plaintiff would work from around 11:00 am to 10:00 pm. On Friday, Plaintiff would work from around 11:00 am to 11:00 pm. On Saturday ( if he works a full day), his daily work hour ran from 12:00 pm to 11:00 pm. If he work a full day on Sunday, he would work from 1:00 pm to 10:00 pm. His half-work day hours on Saturday ran from 5:00 pm to 11:00 pm and ran from 5:00 pm to 10:00 pm on Sunday. Plaintiff was not afforded at least a 30-minute uninterrupted when he works on Sunday, Saturday or on Wednesday. Plaintiff

otherwise enjoyed an around one-hour break on the other work days despite that he would have to make deliveries when needed during his break. Plaintiff therefore worked around fifty-seven (57) hours per week.

51.    For this period, Plaintiff was paid $1,300 per month by cash regardless of the actual hours he worked.

52.    Plaintiff regularly received tips. Plaintiff, however, was never given a notice regarding Defendants' intention to take tip credit against the minimum wage.

53.    Plaintiff Zhiling Wang would pool his tips with one other delivery worker on about 4 workdays but not on all of his work days. For the period from October 1, 2016 to on or around December, 2017, Plaintiff Wang, on average, received about $350 in tips per week. From January 2017 to November 15, 2017, Plaintiff's tip income ranged from about $550- $600 per week.

**Plaintiff Shao Yu Wang**

54.    From on or around July 2016 to on or around September 2016 and then from on or around January 2017 to June 7, 2017, Plaintiff Shaoyu Wang was hired by Defendants to work as a deliveryman for Defendants' restaurant.

55.    From on or around July 2016 to September 2016 and then from January 2017 to June 7, 2017, Plaintiff worked three (3) full days on Wednesday, Thursday and Friday, and two (2) half days on Saturday and Sunday. Specifically, he worked from around 11:00 am to 10:00 pm on Wednesday and Thursday, from around 11:00 am to 11:00 pm on Friday. He worked from 5: 00 pm to 11:00 pm on Saturday and from 5:00 pm to 10:00 pm on Sunday. Although Plaintiff had to cut short his break if there are deliveries have to be made during his break, Plaintiff generally had a one-hour break on Thursday and Friday. Plaintiff generally did not have any uninterrupted

breaks during his work on Wednesday, Saturday and Sunday. Plaintiff therefore worked around forty-three (43) hours a week.

56.     During all relevant employment periods, Plaintiff was paid $60 by cash for a full workday and $40 for a half work day by cash regardless of the number of hours he actually worked.

57.     Plaintiff regularly received tips. Plaintiff, however, was never given a notice regarding Defendants' intention to take tip credit against the minimum wage.

58.     Plaintiff Shaoyu Wang would pool his tips with one other delivery worker on some but not on all of his work days. For all relevant periods, Plaintiff Shaoyu Wang generally received about from about $350- $400 per week in tips.

59.     Defendants did not compensate Plaintiffs minimum wage and overtime compensation according to state and federal laws.

60.     Plaintiffs were not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours, one day each week.

61.     Defendants knowingly and willfully operated their business with a policy of not reimbursing Plaintiffs for expenses incurred in relation to tools of the trade used by Plaintiffs in order to deliver food to customers of Defendants. Plaintiffs were required to use their own vehicle , and pay any and all expenses acquired during the course of deliveries, this includes but is not limited to; tolls, parking, maintenance, tickets and fines.  Specifically, Plaintiff Chen Wang spent about $350 on gas per month and about $200 on traffic ticket and maintenance. Plaintiff Shaoyu Wang spent about $75 a week on gas and in total spent around $200 on maintenance and traffic tickets during the periods he worked for Defendants. Plaintiff Zhilin Wang spent about $350 to $400 per month on gas and about $300 half a year on maintenance.

62.     Defendants did not provide Plaintiffs with a wage notices at the time of their hiring.

63.     All three Plaintiffs were paid every two weeks by cash, Defendants sometimes would delay on making overdue wage payments to Plaintiffs.

64.     Plaintiffs were not given any wage statements along with each wage payment as required by the NYLL.

65.     Defendants committed the following alleged acts knowingly, intentionally and willfully.

66.     Defendants knew that the nonpayment of minimum wages, overtime and the "spread of hours" premium would economically injure Plaintiffs and the Collective Members by their violation of federal and state laws.

67.     While employed by Defendants, Plaintiffs was not exempt under federal and state laws requiring employers to pay employees overtime.

68.     Plaintiffs and the FLSA Collective Action Members' workdays frequently lasted longer than 10 hours.

69.     Defendants did not pay Plaintiffs and other Collective Action members' New York's "spread of hours" premium for every day in which they worked over 10 hours.

70.     Defendants failed to keep full and accurate records of Plaintiffs' hours and wages.

71.     Defendants did not provide Plaintiffs and other Collective Action Members with written notices about the terms and conditions of their employment upon hire in relation to their rate of pay, regular pay cycle and rate of overtime pay. These notices were similarly not provided upon Plaintiffs and other Collective Members' pay increase(s).

**COLLECTIVE ACTION ALLEGATIONS**

72.     Defendants knowingly and willfully operated their business with a policy of not paying either the FLSA minimum wage or the New York State minimum wage to Plaintiffs or other similarly situated employees.

73.     Defendants knowingly and willfully operated their business with a policy of not paying Plaintiffs and other similarly situated employees either the FLSA overtime rate (of time and one-half), or the New York State overtime rate (of time and one-half), in violation of the FLSA and New York Labor Law and the supporting federal and New York State Department of Labor Regulations.

74.     Defendants knowingly and willfully operated their business with a policy of not paying the New York State "spread of hours" premium to Plaintiffs and other similarly situated employees.

75.     Plaintiffs bring this action individually and on behalf of all other and former non-exempt employees who have been or were employed by the Defendants restaurant for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") and whom failed to receive minimum wages, spread-of-hours pay, and/or overtime compensation for all hours worked in excess of forty (40) hours per week (the "Collective Action Members"), and have been subject to the same common decision, policy, and plan to not provide required wage notices at the time of hiring, in contravention to federal and state labor laws.

76.     Upon information and belief, the Collection Action Members are so numerous the joinder of all members is impracticable. The identity and precise number of such persons are unknown, and the facts upon which the calculations of that number may be ascertained are presently within the sole control of the Defendants. Upon information and belief, there are more than twenty (20) Collective Action Members, who have worked for or have continued to work for

the Defendants during the Collective Action Period, most of whom would not likely file individual suits because they fear retaliation, lack adequate financial resources, access to attorneys, or knowledge of their claims. Therefore, Plaintiffs submit that this case should be certified as a collection action under the FLSA, 29 U.S.C. §216(b).

77.      Plaintiffs will fairly and adequately protect the interests of the Collective Action Members, and have retained counsel that is experienced and competent in the field of employment law and class action litigation. Plaintiffs have no interests that are contrary to or in conflict with those members of this collective action.

78.      This action should be certified as collective action because the prosecution of separate action by individual members of the collective action would risk creating either inconsistent or varying adjudication with respect to individual members of this collective that would as a practical matter be dispositive of the interest of the other members not party to the adjudication, or subsequently impair or impede their ability to protect their interests.

79.      A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation makes it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as collective action.

80.      Questions of law and fact common to members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members. Among the questions of fact common to Plaintiffs and other Collective Action Members are:

a. Whether the Defendants employed Collective Action members within the meaning of the FLSA;

b. Whether the Defendants failed to pay the Collective Action Members the minimum wage in violation of the FLSA and the regulations promulgated thereunder;

c. Whether the Defendants failed to pay the Collective Action Members overtime wages for all hours worked above forty (40) each workweek in violation of the FLSA and the regulation promulgated thereunder;

d. Whether the Defendants failed to pay the Collective Action Members spread of hours payment for each day an employee worked over 10 hours;

e. Whether the Defendants failed to provide the Collective Action Members with a wage notice at the time of hiring as required by the NYLL;

f. Whether the Defendants' violations of the FLSA are willful as that term is used within the context of the FLSA; and,

g. Whether the Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, punitive, and statutory damages, interest, costs and disbursements and attorneys' fees.

81.    Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

82.    Plaintiffs and others similarly situated have been substantially damaged by Defendants' unlawful conduct.

**STATEMENT OF CLAIM**

**COUNT I**
**[Violations of the Fair Labor Standards Act—Minimum Wage**
**Brought on behalf of the Plaintiffs and the FLSA Collective]**

17

83.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

84.    At all relevant times, upon information and belief, Defendants have been, and continue to be, "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. §§206(a) and §§207(a). Further, Plaintiffs is covered within the meaning of FLSA, U.S.C. §§206(a) and 207(a).

85.    At all relevant times, Defendants employed "employees" including Plaintiff, within the meaning of FLSA.

86.    Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000.

87.    The FLSA provides that any employer engaged in commerce shall pay employees the applicable minimum wage. 29 U.S.C. § 206(a).

88.    At all relevant times, Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiffs, and the collective action members, for some or all of the hours they worked.

89.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. §206 shall be liable to the employees affected in the amount of their unpaid minimum compensation, and in an additional equal amount as liquidated damages.

90.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by failing to compensate Plaintiffs and Collective Class Members at the statutory minimum wage when they knew or should have known such was due and that failing to do so would financially injure Plaintiffs and Collective Action members.

**COUNT II**
**[Violation of New York Labor Law—Minimum Wage**
**Brought on behalf of Plaintiff]**

91.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

92.    At all relevant times, Plaintiffs were employed by Defendants within the meaning of New York Labor Law §§2 and 651.

93.    Pursuant to the New York Wage Theft Prevention Act, an employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to the total of such under-payments found to be due the employee.

94.    Defendants knowingly and willfully violated Plaintiffs' rights by failing to pay them minimum wages in the lawful amount for hours worked.

**COUNT III**
**[Violations of the Fair Labor Standards Act—Overtime Wage**
**Brought on behalf of the Plaintiffs and the FLSA Collective]**

95.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

96.    The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he or she is employed, or one and one-half times the minimum wage, whichever is greater. 29 USC §207(a).

97.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. §207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC §216(b).

98.     Defendants' failure to pay Plaintiffs and the FLSA Collective their overtime pay violated the FLSA.

99.     At all relevant times, Defendants had, and continue to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiffs and Collective Action Members for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§201, et seq., including 29 U.S.C. §§207(a)(1) and 215(a).

100.    The FLSA and supporting regulations required employers to notify employees of employment law requires employers to notify employment law requirements. 29 C.F.R. §516.4.

101.    Defendants willfully failed to notify Plaintiffs and FLSA Collective of the requirements of the employment laws in order to facilitate their exploitation of Plaintiffs' and FLSA Collectives' labor.

102.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and Collective Members the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known such was due and that failing to do so would financially injure Plaintiffs and Collective Action Members.

### COUNT IV
### [Violation of New York Labor Law—Overtime Pay]

103.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

104.    Pursuant to the New York Wage Theft Prevention Act, an employer who fails to pay proper overtime compensation shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to the total of such under-payments found to be due the employee.

105.    Defendants' failure to pay Plaintiffs and the FLSA Collective their overtime pay violated the NYLL.

106.    Defendants' failure to pay Plaintiffs and the FLSA Collective was not in good faith.

## COUNT V
### [Violation of New York Labor Law—Spread of Hour Pay]

107.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

108.    The NYLL requires employers to pay an extra hour's pay for every day that an employee works an interval in excess of ten hours pursuant to NYLL §§190, et seq., and §§650, et seq., and New York State Department of Labor regulations §146-1.6.

109.    Defendants' failure to pay Plaintiffs' and FLSA Collective spread-of-hours pay was not in good faith.

## COUNT VI
### [Violation of New York Labor Law—Time of Hire Wage Notice Requirement]

110.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

111.    The Defendants failed to furnish to the Plaintiffs at the time of hiring a notice containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any

"doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law; in violation of the NYLL, § 195(1).

112.    Due to the defendants' violation of the NYLL, § 195(1) each Plaintiff is entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-b).

## COUNT VII
### [Violation of New York Labor Law—New York Pay Stub Requirement]

113.    Plaintiffs re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

114.    The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL §195-1(d).

115.    Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiff, and did not provide the pay stub on or after each Plaintiff's payday.

116.    Due to Defendants' violations of New York Labor Law, Plaintiffs is entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for Plaintiffs for costs and attorneys' fees pursuant to New York Labor Law N.Y. Lab. Law §198(1-d).

## COUNT VIII
### [Violation of New York Labor Law—Frequency of Payments]

117.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

118.    Plaintiffs were manual workers as defined by the New York Labor Law.

119.    Defendants were required to pay the Plaintiffs on a weekly basis, and no later than seven (7) days after the end of the workweek in which the wages were earned.

120.    Defendants paid Plaintiffs bi-weekly and were sometimes late on making overdue wage payments.

121.    Plaintiffs are entitled to statutory damages equal to the total of the delayed wages.

### COUNT IX
**[Violation of the Fair Labor Standards Act —Failure Reimburse for Expenses relating to Tools of the Trade]**

122.    Plaintiffs on behalf of themselves and all other similarly situated Collective Action Members and members of the Class repeats and re-alleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

123.    At all relevant times, the Defendants had a policy and practice of refusing to reimburse Plaintiffs for expenses incurred in relation to tools of the trade, which includes but is not limited to tolls, parking, maintenance, tickets and fines, incurred in order to deliver food to customers of Defendants.

124.    Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to reimburse Plaintiffs for expenses incurred in relation to tools of the trade used by Plaintiffs when Defendants knew or should have known such was due.

### <u>Prayer for Relief</u>

WHEREFORE, Plaintiffs, on behalf of themselves and the FLSA collective members, respectfully requests that this court enter a judgment providing the following relief:

a)    Authorizing Plaintiffs at the earliest possible time to give notice of this collective action, or that the court issue such notice, to all persons who are presently, or have been employed

by defendants as non-exempt tipped or non-tipped employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of their right to join this lawsuit if they believe they were denied proper hourly compensation and overtime wages;

b)      Certification of this case as a collective action pursuant to FLSA;

c)      Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiffs and their counsel to represent the Collective Action Members;

d)      A declaratory judgment that the practices complained of herein are unlawful under FLSA and New York Labor Law;

e)      An injunction against Ichiro Asian Fusion Inc., its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

f)      An award of unpaid wages and minimum wages due to Plaintiffs under the FLSA and New York Labor Law, plus compensatory and liquidated damages in the amount of twenty five percent under NYLL §§190 et seq., §§650 et seq., and one hundred percent after April 9, 2011 under NY Wage Theft Prevention Act, and interest;

g)      An award of unpaid overtime wages due under FLSA and New York Labor Law, plus compensatory and liquidated damages in the amount of twenty five percent under NYLL §§190 et seq., §§650 et seq., and one hundred percent after April 9, 2011 under NY Wage Theft Prevention Act, and interest;

h)      An award of unpaid "spread of hours" premium due under the New York Labor

24

Law;

i)      An award of damages for Defendants' failure to provide wage notice at the time of hiring as required under the New York Labor Law.

j)      An award of statutory damages equal to the total amount of delayed wages.

k)      An award of liquidated and/or punitive damages as a result of Defendants' knowing and willful failure to pay minimum wages and overtime compensation pursuant to 29 U.S.C. §216;

l)      An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay minimum wages, overtime compensation and "spread of hours" premium pursuant to New York Labor Law;

m)      An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. §216(b) and NYLL §§198 and 663;

n)      The cost and disbursements of this action;

o)      An award of prejudgment and post-judgment fees;

p)      Providing that if any amounts remain unpaid upon the expiration of ninety days following the issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL §198(4); and

q)      Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

## **JURY TRIAL DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the Plaintiffs, on behalf of themselves and the Collective Action Members and members of the Class, demand a trial by jury

on all questions of fact raised by the complaint.


Dated: Flushing, New York December 18, 2017          HANG & ASSOCIATES, PLLC.

                                                     */S/ KELI LIU*
                                                     Keli Liu, Esq.
                                                     136-18 39th Ave., Suite 1003
                                                     Flushing, New York 11354
                                                     Tel: 718.353.8588
                                                     kliu@hanglaw.com
                                                     *Attorneys for Plaintiffs*

# EXHIBIT 1

**CONSENT TO SUE UNDER**
**FEDERAL FAIR LABOR STANDARDS ACT**

I am an employee currently or formerly employed by Ichiro Asian Fusion, Inc., Jian Ping Chen, Danny "Doe", Ben "Doe" and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

SHAOYu WANG
Full Legal Name (Print)

Signature

11/27/17
Date

**CONSENT TO SUE UNDER**
**FEDERAL FAIR LABOR STANDARDS ACT**

I am an employee currently or formerly employed by Ichiro Asian Fusion, Inc., Jian Ping Chen, Danny "Doe", Ben "Doe" and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

Wang zbiLin
Full Legal Name (Print)

_____
Signature

11/27/17
Date

**CONSENT TO SUE UNDER**
**FEDERAL FAIR LABOR STANDARDS ACT**

I am an employee currently or formerly employed by Ichiro Asian Fusion, Inc., Jian Ping Chen, Danny "Doe", Ben "Doe" and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

CHEN WANG
Full Legal Name (Print)

Chen Wag
Signature

11/27/17
Date

# EXHIBIT 2

## NOTICE OF INTENTION TO ENFORCE SHAREHOLDER LIABILITY
## FOR SERVICES RENDERED

TO: Ben "Doe"

PLEASE TAKE NOTICE, that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, you are hereby notified that Chen Wang, Zhilin Wang, Shaoyu Wang, and others similarly situated intend to charge you and hold you personally liable, jointly and severally, as one of the ten largest shareholders of Ichiro Asian Fusion Inc. for all debts, wages, and/or salaries due and owing to them as laborers, servants and/or employees of the said corporations for services performed by them or the said corporations within the six (6) years preceding the date of this notice and have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.

Dated: December 18, 2017

**NOTICE OF INTENTION TO ENFORCE SHAREHOLDER LIABILITY
FOR SERVICES RENDERED**

TO: Danny "Doe"

     PLEASE TAKE NOTICE, that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, you are hereby notified that Chen Wang, Zhilin Wang, Shaoyu Wang, and others similarly situated intend to charge you and hold you personally liable, jointly and severally, as one of the ten largest shareholders of Ichiro Asian Fusion Inc. for all debts, wages, and/or salaries due and owing to them as laborers, servants and/or employees of the said corporations for services performed by them or the said corporations within the six (6) years preceding the date of this notice and have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.

     Dated: December 18, 2017

**NOTICE OF INTENTION TO ENFORCE SHAREHOLDER LIABILITY
FOR SERVICES RENDERED**

TO: Jian Ping Chen

  PLEASE TAKE NOTICE, that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, you are hereby notified that Chen Wang, Zhilin Wang, Shaoyu Wang, and others similarly situated intend to charge you and hold you personally liable, jointly and severally, as one of the ten largest shareholders of Ichiro Asian Fusion Inc. for all debts, wages, and/or salaries due and owing to them as laborers, servants and/or employees of the said corporations for services performed by them or the said corporations within the six (6) years preceding the date of this notice and have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.

  Dated: December 18, 2017